## THE FLEMINGTON.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

### No. 223.

COLLISION ⊚⇒100(2)—STEAM VESSELS MEETING IN FOG—FAILURE TO SOUND FOG SIGNALS.

A ferryboat passing down and across North River from Weehawken in a fog *held* in fault for a collision with a car float in tow alongside of a tug passing up a short distance outside the New York piers, on the ground that she was not sounding the fog signals required by the rules.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 214, 215; Dec. Dig. ⊚⇒100(2).]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the West Shore Railroad Company, owner of the ferryboat Syracuse, against the steam tug Flemington; the Central Railroad of New Jersey, claimant. Decree for libelant, and claimant appeals. Reversed.

F. V. Barns and James J. Machlin, both of New York City, for appellant.

E. Farwell, James K. Symmers, and Barry, Wainwright, Thacher & Symmers, all of New York City, for appellee.

Before COXE and ROGERS, Circuit Judges, and HOUGH, District Judge.

COXE, Circuit Judge. This is an appeal from a final decree of the District Court for the Southern District of New York holding the steam tug Flemington solely liable for a collision between a car float in tow of the tug and the ferryboat Syracuse. The collision occurred, in a dense fog, between Piers 21 and 22 North River about 400 feet from the pier line. The tide was ebb. The tug, with the float on her port side, proceeded across the river and because of the thick fog tied up at Pier No. 10 on the New York side. The fog lifting soon after, the master of the tug decided to proceed to his destination and started up the river, going slowly and sounding the whistle at intervals. The Syracuse was bound down the river from Weehawken to Cortlandt street blowing her whistle at intervals. The tide was the slack of ebb but there was a freshet running in the river.

We think the evidence shows that the Syracuse did not sound the regulation fog signals. She did blow a series of short toots, but the law does not provide for such signals and the absence of the regulation long blast signals may well have confused and misled the master of the Flemington. Certainly the burden was on the Syracuse to show that the failure to blow the long blasts, as required by law, did not contribute to the injury. We do not see how we can say that this clear violation of the rules might not have caused or contributed to the collision. As was said by the Supreme Court in The Pennsylvania, 19 Wall. 125, at page 136, 22 L. Ed. 148:

"But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute."

If it were the duty of the Flemington to slow down it was equally the duty of the Syracuse to do the same, especially as she was coming down on the freshet tide. Even if not under steam, she should, at least, by backing have maintained her position and not drifted down the river.

We think that the decree should be reversed with costs of this court and the case remanded with instructions to enter a decree dividing the damages and costs of the District Court.