## THE G. K. MELLON.

## THE JOHN M. WORTH.

Circuit Court of Appeals, Second Circuit. January 7, 1929.

No. 102.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for McWilliams Blue Line, Inc.

William F. Purdy, of New York City, for Thames River Line, Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. On July 24, 1926, the steam tug Owen J. McWilliams, with five loaded coal barges in tow, three of which were owned by the James McWilliams Blue Line, Inc., was proceeding eastward on the Long Island Sound to the Bridgeport, Conn., harbor, when it anchored outside the channel. When the tug and tow came to anchor, there were two boats in the first hawser tier, two in the second tier, and the G. K. Mellon tailing behind. After anchor was dropped, the tug maneuvered the tow, replacing its barges. Two were placed on the starboard side of the tug and one on the port side; tailing behind the starboard vessel in the head tier were placed two barges, made fast tandem. The barge Mellon was the tail boat of the entire tow, which was about 375 feet long. A fog prevailed, but no fog signals were sounded by the McWilliams from the time the anchor was dropped, while the tug maneuvered to place the vessels in the head tier, or at any time up to the collision. There is a dispute as to whether or not the tow was in the channel, but we agree with the finding of the trial court that it was not. It is established that the barge Mellon was sounding a fog signal; the other barges were not.

The steamship Worth left her dock at Bridgeport, bound for New York, and shortly after leaving her pier she encountered a fog and tied up at the city dock in Bridgeport. At 5:08 a. m. the weather was clear, and the Worth proceeded down the main channel, when a dense fog was encountered, which shut in rapidly when she arrived at the sea buoy which marks the entrance to the channel. A one-whistle signal was heard by the master of the Worth, who said he believed a vessel was feeling her way up the

channel. He then threw his wheel hard aport and sheered to starboard, and then heard an alarm and one-whistle, whereupon he blew the regulation fog signal. The tug Owen J. McWilliams was observed about half a point off the port bow. The Worth was rapidly swinging to starboard under a port helm, but the Worth struck the barge Mellon a few feet from her stern and sunk her. The tow of the tug was tailing at right angles across the steamer's course.

The liability of the Worth is clear from the testimony of her own navigator. She had failed to perceive that she was running into a dense fog, and failed to blow fog signals, as required by article 15 of the Inland Rules (33 USCA § 191), as found below; ignored the rule requiring her to reduce her speed before, as well as after, entering the fog; failed to moderate her speed or stop her engines until the alarm was given by the tug. She was also at fault in not having a vigilant lookout.

The Owen J. McWilliams was also negligent, for she sounded no fog signals, while maneuvering about with her tow, or while at anchor. The Inland Rules provide that a vessel is under way, within the meaning of these rules, when she is not at anchor or made fast to the shore or the ground. That she sounded no fog signals, up to the time of collision, her master and mate admit. Care, proportionate to the exposed and dangerous condition of the anchorage, she assumed, and failed in its exercise. Had she sounded her fog signals, the collision might have been avoided. The Caldy (C. C. A.) 153 F. 837. And blowing an alarm does not excuse the tug from signaling as required when she is in a fog. The Flemington (C. C. A.) 234 F. 864. When she did signal, she gave a passage signal, which misled the Worth. For these faults, the McWilliams was properly held responsible.

But it is argued that, while the Mellon blew, and thereafter complied with the rules regarding, a fog signal, the other two barges owned by the McWilliams Blue Line were negligent in failing to blow fog signals, and that they should likewise be held at fault, and damages should be divided, so as to assess one-fourth on the steamship Worth and one-fourth on the steam tug, and one-fourth on each of the other two McWilliams Blue Line barges. We are referred to The Eugene F. Moran v. New York Cent. & H. R. R. Co., 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600, for such a division of damages. But the rule of that case has no application here. The Owen J. McWilliams had been

maneuvering about just before the collision, rearranging her tow and placing it at anchor. The master of the McWilliams testified they had just got the last barge placed, when the captain stepped out of the pilot house and went back to grab the whistle to blow the alarm, when the Worth came in sight and caused the collision. Therefore, up to the time of the collision, the flotilla was in full charge of the tug. It was her duty to give the necessary signals, and, while it is incumbent upon barges while at anchor to give fog signals by ringing a bell, that duty is not required when the tug is in charge of the barges, in active navigation.

The rule is applicable that an equal division of damages be made for the faults of the Worth and the tug McWilliams, both of which contributed to the loss of the Mellon. The Catharine v. Dickinson, 17 How. 170, 15 L. Ed. 233; The Cherokee (D. C.) 253 F. 851.

Decree affirmed, with costs.