## NAAMLOOZE VENOOTSCHAP MAATSCHAPPIJ STOOMSCHIP BARENDRECHT v. MORAN TOWING & TRANSPORTATION CO. THE BARENDRECHT. THE CATHERINE MORAN.

(Circuit Court of Appeals, Second Circuit. June 15, 1925.)

Nos. 356, 357.

1. **Collision** ⊛═100(2)—**Dredge held negligent in matter of speed during fog.**

Dredge *held* negligent in proceeding at improper speed in fog, resulting in collision with vessel in tow.

2. **Collision** ⊛═82(2)—**Steamer in fog must control speed, so that she can avoid collision.**

Steamer in fog must control her speed, so that she can avoid collision with another; herself observing proper precautions.

3. **Collision** ⊛═57—**Tow, if inert and helpless, is not responsible for faults of tug.**

Tow, if inert and helpless, is not responsible for faults of tug.

4. **Collision** ⊛═57—**Being at sea without steam while in tow is not fault on part of vessel.**

Being at sea without steam while in tow is not fault on part of vessel.

5. **Collision** ⊛═100(1)—**Vessel in tow without steam, proceeding at moderate speed, held not at fault in collision.**

Vessel in tow, without steam and helpless, proceeding at a very moderate speed, *held* not at fault in collision with dredge, during fog, regardless of whether negligence of tugmaster aboard her as pilot was imputable to her; faults of navigation alone being imputable if any.

6. **Towage** ⊛═3—**Provision of towing contract as to negligence of tug captain held not changed by misquotation when renewing contract.**

Provision in towing contract that tug's captain, while employed as pilot on vessel having her own steam and propelling power, should be servant of vessel, *held* not changed by a misquotation of it in letter relative to renewal of contract.

Appeals from the District Court of the United States for the Southern District of New York.

Libels by the Naamlooze Venootschap Maatschappij Stoomschip Barendrecht against the Moran Towing & Transportation Com-

pany, in personam, and by the United States against the steamship Barendrecht, her engines, etc., the Barendrecht Steamship Company, claimant, and the steam tug Catherine Moran, her engines, etc., the Moran Towing & Transportation Company, claimant, in the last of which the Barendrecht Steamship Company brought in the Moran Towing & Transportation Company in personam, and also filed cross-libel against the United States. From a decree for libelant in the first libel, and for the United States in the second against the tug Catherine Moran primarily, and the steamship Barendrecht secondarily, and dismissing the cross-libel, the Moran Towing & Transportation Company and the tug Catherine Moran, the Moran Towing & Transportation Company, claimant, appeal. Decree modified.

For opinion below, see 286 F. 386.

Appeal from final decrees upon two libels in the admiralty. The first libel was by the owner of the steamer Barendrecht against the Moran Towing & Transportation Company in personam; the second was by the United States, as owner of the dredge Atlantic against the steamer Barendrecht and the tug Catherine Moran in rem. In this suit the owners of the Barendrecht brought in the Moran Towing & Transportation Company in personam under the fifty-sixth rule. They also filed a cross-libel against the United States, to which the latter filed exceptions. The District Court, upon the Barendrecht's libel, gave the libelant a final decree against the Moran Towing & Transportation Company for full damages; on the libel of the United States a judgment for full damages against the Catherine Moran primarily, and against the Barendrecht secondarily. It dismissed the cross-libel against the United States upon the exceptions for want of jurisdiction.

Both suits arose from a collision in New York Harbor between 8 and 9 on the morning of March 5, 1920. The Moran Company, on August 1, 1919, had made a contract with the owners of the Barendrecht to tow their vessels for the rest of the year at stated terms. This contract was continued for the year 1920. It contained the following clause: "Where the tugboat captain is employed in the capacity of harbor pilot on vessels having their own steam and propelling power, it is understood and agreed as part of the contract of towing that the said tugboat captain is to become the servant of the vessel, and the tugs or their owner are not responsible for his actions nor liable for any damage that

may occur." On renewing the contract by a letter of January 28, 1920, the Moran Company particularly called the attention of the Barendrecht's owners to this clause, but misquoted it as follows: "It being understood that at any time the captain of the tug acts as pilot of a vessel he shall become the ship's agent, and that the tug and tugs shall not be responsible for any damage due or caused through his negligence." There was no such clause in the terms, which were inclosed with this letter.

Acting under the contract, the Barendrecht asked the Moran Company on the day in question to tow the steamer from the foot of Fifty-Sixth street, Brooklyn, to Bayonne. At the time she was light and without steam for power, or even to sound her whistle. The Moran Company, in response to the request, sent the tugs Moran, McAllister, and Retriever, together with one Reynolds, an employee, to take charge of the navigation. Reynolds went upon the bridge of the ship and made up the tow as follows: The Moran ahead on a hawser of 40 or 50 fathoms; the McAllister on the starboard and the Retriever on the port quarter of the Barendrecht. The ship's master was with him on the bridge, but all orders were given by Reynolds. The flotilla passed through Buttermilk Channel, and thence into Bay Ridge Channel, and came into collision with the dredge Atlantic at a place not certainly ascertainable. The starboard bow of the Atlantic struck the starboard bow of the Barendrecht at an angle variously estimated, and scraped along her starboard side, inflicting damage on both vessels.

The Atlantic was a large twin screw dredge, nearly 300 feet in length, which had come in from sea early in the morning, and anchored on the Bay Ridge anchorage ground. As the tide was flood, she was heading south, but at about 8:30, meaning to go up the North River, she weighed anchor and turned about under a starboard helm to pass up Bay Ridge Channel. Her speed was in dispute, but that of the flotilla was little, if any, greater than two miles.

The cause of the collision was confessedly the thick weather which prevailed at the time. When the flotilla left Brooklyn, although it was misty, there was not, properly speaking, any fog. The mist shut in more thickly as the flotilla went on, but no one of the vessels sounded fog signals. The Barendrecht could not, being without steam. The Moran, which was primarily bound to do so, failed to blow, thinking it unnecessary. Rey-

nolds made no effort to order the Moran to sound her whistle, nor, if that were impossible, did he give any similar orders to either tug alongside. The Atlantic, having turned about, in whole or in part, found the fog too thick to proceed further, and decided to get back to the anchorage ground. The District Court found that she was blowing fog signals, though these were not heard by the Moran or Reynolds on the Barendrecht.

The Moran and the Atlantic made each other out at nearly the same time and exchanged a two-blast signal. The Moran at once hard-astarboarded, and Reynolds ordered the Retriever to go full speed astern and the McAllister full speed ahead. The Atlantic, on making out the Moran close aboard, after blowing two blasts, hard-astarboarded and backed at least' her port engine, probably not both. Later, but after the first contact, she went full speed ahead on her starboard engine. She could not check her way or clear the Barendrecht, though she safely passed the Moran.

The District Court found the Moran and Reynolds at fault, and the Barendrecht by imputation of Reynold's fault. It exculpated the Atlantic, because she was blowing whistles at the time and was making back to the anchorage ground.

Park, Mattison & Lynch and Samuel Park and Anthony V. Lynch, Jr., all of New York City, for Moran Co. and the Moran.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (W. H. McGrann and W. H. Arnold, both of New York City, of counsel), for the Barendrecht.

Anthony M. Menkel, of New York City, for the United States.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The fault of the Moran and of Reynolds seems to us too well established to require discussion. We think, however, that in those faults the Atlantic must share. We agree that the collision occurred in the channel, and that she was blowing proper fog signals; but we cannot agree that her speed was right in a fog. The District Court found it to have been from 4 to 5 miles an hour, though on her master's testimony it was less. We think the probabilities coincide with the finding. The Moran was 250 or 300 feet in advance of the Barendrecht, and yet, although the Atlantic made out the Moran, she could not stop her headway before colliding with the ship.

[2] As the flotilla was approaching at a most moderate speed, the Atlantic was at fault. The rule has been many times stated that a steamer in a fog must control her speed, so that she can avoid collision with another; herself observing proper precautions. The Umbria, 166 U. S. 404, 17 S. Ct. 610, 41 L. Ed. 1053; The Chattahooche, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801 (a sailing vessel); The Pennsylvania R. R. Co. No. 5, 181 F. 833, 104 C. C. A. 343 (C. C. A. 2); The Manchioneal, 243 F. 801, 156 C. C. A. 313 (C. C. A. 2); The City of Norfolk, 266 F. 641 (C. C. A. 4); The Haven, 277 F. 957 (C. C. A. 2). The mere facts seem to us to prove beyond question that the Atlantic's speed could not have been in proper control.

[3] The faults of navigation being established, the liabilities follow. As to any liability of the Barendrecht, primary or secondary, we cannot agree with the court below. It is well established that the tow, if inert and helpless, is not responsible for the faults of the tug. Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591; The Eugene F. Moran, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600. The fiction, recognized in The China, 7 Wall. 53, 19 L. Ed. 67 does not apply by which the fault of her pilot is imputed to the ship. The case at bar is, however, different, because a pilot was on board, directing navigation. It has been held, even in such cases, and though the master is with the pilot on the bridge, that the ship is not liable, if there is an "independent contract" of towage. The Cromwell, 259 F. 166, 170 C. C. A. 234 (C. C. A. 4); The John D. Rockefeller (C. C. A.) 272 F. 67 (C. C. A. 4). Some of our language in The Edward G. Murray, 278 F. 895, 898, looks the other way, and we are disposed to leave that question open. It is enough in the case at bar to say that, if any liability is to be imputed to the ship from the faults of a pilot, employed under an independent contract, it must in any event be limited to faults of navigation which may be charged against her personally. Whether or not her imputed responsibility is to be extended to such cases at all, at least it must be consistently applied. She cannot be treated as a tort-feasor, unless—taken as a juristic person—she is personally at fault.

[4, 5] It was not a fault to be without steam while in tow, and there was no other fault which can be charged against her, because her navigation was proper. So we hold that, even under the strictest rule of imputed responsibility, she was in this case innocent, and that the Atlantic may not look at her, primarily or secondarily.

[6] On the other hand, we hold the Moran Company in personam for the fault of Reynolds, its agent, employed under a contract which prescribed ordinary care in seamanship, in which he failed. The Edward G. Murray, supra. The exception in the contract did not exonerate the company. It was limited to ships with steam and "propelling power." The misquotation of this exemption clause in the letter of January 28, 1920, did not override the provisions of the agreement itself. It merely called attention to the clause without pretending to amend it. Such modifications must be more clearly expressed.

Finally, the decision of the Supreme Court in Luckenbach S. S. Co. v. Barge Thekla, 1925 A. M. C. 37, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313, has established the liability of the United States under the cross-libel. Hence it follows that the libels must be disposed of as follows: A decree will pass on the Barendrecht's libel against the Moran Company and on the cross-libel against the United States, each for full damages. The libel of the United States will be dismissed against the Barendrecht, and a decree of half damages entered against the Catherine Moran. The petition of the Barendrecht against the Moran Company, impleaded in the suit of the United States, will be dismissed, in consequence of the dismissal of the libel in that suit against the Barendrecht. The Barendrecht will recover full costs against the Moran Company; otherwise, no costs.

Decree modified in accordance with the foregoing.