## The JOHN F. LEWIS.
### No. 53.

District Court, E. D. Pennsylvania.
March 12, 1930.

Bigham, Englar & Jones, of New York City, and Acker, Manning & Brown and Everett H. Brown, Jr., all of Philadelphia, Pa., for libelant.

Lewis, Adler & Laws and Otto Wolff, Jr., all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The libelants were insurers of a grain elevator hull which was damaged in a collision with a scow of unknown ownership, and in this action in admiralty they seek to recover against the tug John F. Lewis which at the time of collision had the elevator hull in tow. The facts are as follows: On June 19, 1922, the Lewis, with her tow, on a voyage from Wilmington to New York, was about to enter New York harbor. The tow consisted of, first, a barge on a hawser 200 fathoms from the tug; and, second, the elevator hull (being towed stern foremost) on a hawser about 150 fathoms in length behind the barge. Between 7 and 8 o'clock in the evening, the tug and its tow passed Scotland lightship at the entrance to New York harbor. At that time the weather was somewhat hazy, the tide ebb, and the wind negligible. The tug left Scotland lightship on her starboard hand and set a course up the Swash channel. As she proceeded darkness came on and at the same time the fog became heavier, until by 9 o'clock it was so thick that she could not see the lights on the barge astern. At that point the master reduced the speed of the tug to about two miles per hour and began to blow fog signals, one long blast followed by two short ones. She proceeded in this manner until 9:30, when another tug coming toward them with a mud scow in tow crossed the bow of the barge astern of the Lewis diagonally from starboard to port and parted the hawser between the Lewis and the barge. The mud scow, following, came down the starboard side of the barge doing some damage to it, cleared it, carrying its hawser underneath the barge, and then collided with the elevator hull on her starboard side as she was being towed (actually her port side) also damaging it. The outgoing tug and scow disappeared in the darkness and fog before their identity could be ascertained. No one on the Lewis saw them at any time. The first knowledge the master of the Lewis had that anything had happened was when the speed of his tug increased by reason of the parting of the hawser between her and the barge. The barge immediately anchored, the tug stood by, and the whole flotilla awaited the lifting of the fog. After the fog was lifted, it was discovered that they were alongside Roamer

shoal. The tug again made up her tow and proceeded to her destination.

The first fault charged against the tug was failing to stop and anchor when the fog became dense. I am of the opinion that under the circumstances it was not negligent for the tug to proceed in the manner in which she did. The rule does not require that the vessel must always stop in a fog. In the Naamlooze Venootschap Maatschappij Stoomschip Barendrecht v. Moran Towing & Transportation Co. (C. C. A.) 9 F.(2d) 614, it was stated that a steamer in a fog must control her speed, so that she can avoid collision with another; herself observing proper precautions. In fog collision cases the duty of care is met if the vessel is under such control that she can reverse her engines and come to a standstill in time to avoid colliding with a vessel or object which she ought to see, having regard to the fog density. Thus, in the City of Norfolk (C. C. A.) 266 F. 641, 645, the court said: "If the fog is so dense as to justify the master in believing that another vessel going at a moderate speed could not be seen at the distance in which he could stop his vessel, and that the two vessels would be in danger of collision, then the master should anchor and give the statutory signals." See, also, The Manchioneal (C. C. A.) 243 F. 801; The P. R. R. No. 5 (C. C. A.) 181 F. 833. As to the density of the fog in this case, the master of tug testified that he could not see the lights of the barge which was about 200 fathoms or some 1,200 feet astern. He also said that he "could not see anything," but that statement, of course, cannot be taken literally. Jacobson, the only man on the elevator hull, testified that he saw the outcoming tug after she had crossed the line of the tow and was about 50 feet from the port bow of the barge. That would put her about 1,000 feet away from him. There is nothing to show that the Lewis, proceeding with a heavy tow at less than 3 miles an hour against an ebb tide, could not have stopped her headway within 1,000 feet, and I think that she could. It must also be remembered that when the fog became dense the Lewis was in the Swash channel and she had to consider the danger arising from obstructing the channel by anchoring there with her flotilla.

The second fault charged is failure to navigate properly with reference to the approaching tug and mud scow. The libelants' case here depends upon showing that the Lewis had some knowledge before the collision that the outcoming tug was in her vicinity, and this involves what is really the only disputed fact in the case. The libelants rely upon the testimony of Jacobson who testified that about three minutes before the collision he heard the Lewis blow two long blasts of the whistle, inviting a starboard to starboard passing. Jacobson, of course, could not see the Lewis at the time, but testified from the direction of the sound. The libelants argue that Jacobson probably was mistaken, and that the signal came from the outcoming tug, but contend that this is not important, because whether the signal was from the outcoming tug or from the Lewis it indicated that the Lewis had knowledge of the presence of the outgoing scow in the immediate vicinity. On the other hand, both the master of the Lewis and the second mate testified positively that they neither blew such a signal nor heard it, although the mate said he could hear the fog signal on Roamer shoal. Under the circumstances, I think that this is more than merely negative testimony, and that it is probable that Jacobson mistook the fog signal for the two blast signal. At any rate, I find it to be the fact that no two-blast signal was blown either by the Lewis or by the outcoming tug. It follows that the Lewis cannot be charged with fault in failing to navigate with reference to the tug.

The third fault charged is that the tug failed to see to it that the elevator hull displayed proper lights. The fact is that the elevator hull was carrying two bright lights, one fore and one aft, fastened upon poles. It may be assumed that this was not in accordance with the regulations for the waters of New York harbor, which required two white lights on the stern thwart horizontal to each other, not less than 5 feet apart and not less than 4 feet above the deck house. The finding must be against the libelants on this point for two reasons: First, where there is a representative of the owner of the tow on board the tow, the duty of seeing that proper lights are displayed devolves at least in part upon the vessel being towed. This rule would call for divided damages. Second, the absence of a second light on the stern of the hull could not by any possibility have contributed to the collision. I do not mean to ignore the rule that, where there has been a failure to observe a statutory requirement, the burden of showing that failure in this respect not only did not but could not have contributed to the collision lies upon the party at fault, but in this case it seems obvious that the arrangement of the lights on the hull had nothing whatever to do with the accident. The probabilities are that when the

outcoming tug crossed the hawser between the Lewis and the barge she could not have seen the lights on the hull at all. If she did see the lights they told her of the presence of the hull. The only additional information she would have gained from a proper arrangement of lights was that the hull was the last vessel in the tow. How an erroneous belief that there were other vessels behind the hull could have affected her course in any way I cannot imagine, and I therefore find as a fact that the failure of the hull to display her lights by the harbor regulations did not and could not in any way have contributed to the collision.

The libel may be dismissed, with costs to be taxed.