COMPANIA MARITIMA SAMSOC LIMI-
TADA, S. A. v. MORAN TOWING &
TRANSP. CO., Inc., et al.

UNITED STATES v. COMPANIA MARITI-
MA SAMSOC LIMITADA, S. A., et al.

THE PRIMAVERA.

THE JULIA C. MORAN.

THE THOMAS E. MORAN.

THE CHESAPEAKE.

THE ORA ELLIS.

No. 243, Docket 22327.

United States Court of Appeals
Second Circuit.

Argued May 8, 1952.

Decided June 27, 1952.

608

Burlingham, Veeder, Clark & Hupper, New York City, Adrian J. O'Kane, New York City, of counsel, for Moran Towing & Transp. Co., Inc., and Tugs Julia C. Moran, Thomas E. Moran and Chesapeake.

Myles J. Lane, U. S. Atty., New York City, Leo J. Curren and Charles A. Blocher, New York City, for United States as respondent and cross-libellant, appellee

Herbert P. Reid, New York City, for Compania Maritima Samsoc Limitada, S. A.

Before SWAN, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

These two appeals call for decision fixing the liability for damages caused by a collision in the Hudson River between the "dead" ship Primavera, owned by the appellee Compania Maritima Samsoc Limitada, hereafter called Compania, and the liberty ship Ora Ellis, owned by the United States. The collision occurred in clear weather at about 7:45 on the morning of April 15, 1946 when the tide was flooding at about 1.2 knots and there was a southerly wind, in the direction of the tide, of about 22 miles per hour.

The Ora Ellis left her anchorage off 125th Street at 7:10 A.M. and proceeded down river, a little on the Jersey side of midstream, with a harbor pilot and her master on the bridge and her other officers and her crew at their regular harbor maneuvering stations. She was making, against the tide and wind, about 8 knots over the bottom and the pilot and others observed ahead a number of ships, some ascending and some descending the river and two or three vessels which were anchored near the New Jersey side off the Bethlehem-Ho-boken shipyard, tailing upstream. One of the ships navigating upstream was the South Bend Victory which was on a course about midstream on her way to the Bethlehem shipyard. At 7:39, as she neared the group of anchored vessels and the approaching South Bend Victory, the speed of the Ora Ellis was reduced to about 5 knots and, after an exchange of one blast whistles, she and the South Bend Victory passed port to port. The Ora Ellis was then about abreast the Joshua Slocum which was the furtherest down stream of the anchored vessels above mentioned and was to the starboard of the Ellis.

Meanwhile, the Primavera, which on that morning had been lying at the south side of Pier 14 at the Bethlehem shipyard with her port side to the pier, was undocked by tugs owned by the appellant, Moran Towing & Transportation Company. At 7:30 she was headed out into the river without using steam of her own and was being navigated as follows: a Moran tug pilot went aboard her and under his direction the tug Thomas E. Moran, of 1200 horsepower, was made fast to the Primavera's starboard quarter to supply motive power; the tug Julia C. Moran, of 400 horsepower, was also placed on the starboard side with a headline forward; the tug Chesapeake, of 350 horsepower, was alongside the Thomas E. Moran with a headline forward which was removed after the undocking was completed. The Primavera was to be moved over to a Brooklyn pier by the tugs operating in this fashion and proceeded slowly downstream, at an angle of about 45 degrees to the thread of the channel, on a course which would take her across the bow of the anchored Joshua Slocum. She had no signals to indicate that she had no motive power of her own and neither she nor the tugs, which were all on her starboard side, sounded any signals.

At 7:42½, when the Ora Ellis was about abreast the stern of the Joshua Slocum, those on her bridge and her lookout and chief mate on her forecastle all saw the bow of the Primavera, some 600 feet ahead, slowly emerge across the bow of the Slocum, moving toward midstream and the course of the Ellis. The Ellis immediately

sounded a danger signal and stopped her engines. A half minute later, at 7:43, her engines were rung half speed astern and, seconds later, she went full speed astern which caused her bow to swing a few degrees to starboard and her stern a little to port. This succeeded in taking off most, if not quite all, of her headway before the collision. No signal was given in response to the Ellis' danger signal and the Primavera continued toward midstream at the same time drifting broadside upstream with the wind and tide. The two tugs made fast to the Primavera backed full astern to stop her headway but they were unable to prevent her upstream drift. The stem of the Ellis and the port side of the Primavera forward of the bridge came together at an angle between forty and seventy degrees about a point to port off the bow of the Slocum and some 450 feet away.

The owner of the Primavera sued the Moran Towing & Transportation Co. Inc., the three tugs and the United States as owner of the Ora Ellis. The United States filed a cross libel against the Primavera and her owner and against the Moran Company and the three tugs. The district judge held the Moran pilot on the Primavera negligent in that he did not put a tug at the ship's port bow to keep her under control against the wind and tide, in that he undertook to tow her with inadequate power, in that he did not have a lookout on her port hand and "in failing to advise the Ora Ellis of his intentions and movements after the Ora Ellis had sounded the danger signal." He entered interlocutory decrees for the libellant and the cross libellant holding the Moran Towing & Transportation Co. Inc. and the three tugs jointly and severally liable for the damages caused by the collision and dismissing the libel against the United States and that filed by it against the Primavera and Compania. The Moran Company and the tugs appealed and Compania and the United States filed cross assignments of error.

■ The Primavera, a "dead" ship being towed under the direction of the agents of the Moran Towing & Transportation Co. Inc., an independent contractor which had undertaken to tow the ship, is not liable unless she was personally at fault and that was not shown. Naamlooze Venootschap, etc. v. Moran Towing & Transp. Co., 2 Cir., 9 F.2d 614; Sturgis v. Boyer, 24 How. 110, 16 L.Ed. 591.

■ Nor are the tugs liable *in rem*. They did whatever the pilot on the bridge of the Primavera directed them to do and no marine tort was shown to have been committed by them. Without that they are not legally responsible for what occurred. The Edward G. Murray, 2 Cir., 278 F. 895; The W. L. Steed, 2 Cir., 79 F. 2d 2, certiorari denied sub nom. John E. Moore Co. v. Pan American Petroleum & Transport Co., 297 U.S. 708, 56 S.Ct. 500, 80 L.Ed. 995. The court below held them liable on the theory that they were unseaworthy since they were inadequate for the towage they undertook. There was no evidence to support this, however, except that four tugs were subsequently used to complete the Primavera's movement to the Brooklyn pier. Whatever may have prompted the later use of an additional tug, it does not necessarily indicate that the original three, if properly directed, would not have been sufficient. In fact, there was testimony that only three tugs were customarily used. There was, therefore, no evidence to support the finding that the tugs were at fault.

■ However, while it was not shown that the motive power of the three tugs was inadequate to perform the contract of towage the Moran Towing & Transportation had undertaken to perform with them, there was substantial evidence to show that the Moran pilot in charge of the operation was negligent in the use he made of them. We agree that instead of letting the Chesapeake remain idly by she should have been placed at the Primavera's port bow to hold the vessel downstream against the wind and tide. Had that been done there would have been a fair chance of avoiding the collision even after the danger of it was acute. Furthermore, we also agree with the trial judge that the pilot was negligent in not having a lookout on the port hand of the Primavera when the flotilla was "proceeding into the much travelled fairway of the river."

■ With respect to the conduct of the Ora Ellis, the lower court held that she acted properly, under the circumstances, when she blew a danger signal and reversed her engines since her position was then one in extremis. While we think that as of the time she did reverse her choice of that means to avoid collision was permissible, we, nevertheless, think it was error to dismiss the libel against the United States because the dangerous situation then confronting the Ellis should be attributed to her own fault in not having previously seen the Primavera, with that comprehension of the situation which seeing entailed, when that vessel was angling down stream on a course which would cross that of the Ellis. That is to say, she should have been aware that the Primavera was being undocked while that maneuver was in progress and, following that, of the movement of that vessel. The pilot on the Ellis, her master and the officer on watch all saw a group of vessels lying off the Bethlehem shipyard but did not notice whether any of them were under way. The master testified that he "was not interested in that group of vessels"; the officer on watch testified that he paid no particular attention to them since he " * * * knew what they were there for. I knew they were there waiting berth in the yard." The pilot gave no explanation for his not having watched these ships sufficiently closely to have seen the Primavera earlier than he did. In fact, he testified on cross-examination that the course of the Ellis was such, at that part of the river, that it was headed directly for the Bethlehem yard and that he was in a position to see anything moving out of the yard. Further, that he knew "the movements of drydocks, that with the high water they are putting ships in and taking them out all the time" and that he knew this was being done at the Bethlehem yard. He also admitted that he would be expecting ships to be moving out from the yard at the time he was passing it because it was then about high water. In view of all this, the Ora Ellis was guilty of fault in not maintaining such an attentive lookout that the danger threatened by the movement of the Primavera was recognized before she got into such close quarters that she could not hold back from collision.

The decree dismissing the cross libel of the United States is affirmed. The dismissal of the original libel against the United States is reversed and that respondent is held for half damages. The decree holding the tugs liable in rem is reversed. That against the Moran Towing & Transportation Co. Inc. is modified to hold that respondent for half damages only.