# THE EUGENE F. MORAN.[1]

## CERTIFICATES FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 87, 88.　Argued January 22, 25, 1909.—Decided February 23, 1909.

Where two tugs and two scows in tow of one of the tugs are all in fault for a collision, each of the four vessels is liable for an equal share of the damages, and the liability is to be so apportioned even if more than one of the vessels are owned by the same person.

*Sturgis* v. *Boyer*, 24 How. 110, followed to the effect that a tug having control of a vessel in tow is solely responsible for damages to the other vessel caused by the tug alone.

Fiction, not being a satisfactory ground for taking one man's property to satisfy another man's wrong, should not be extended.

The fact that vessels are tied together in a flotilla does not make the flotilla a unit in proceedings *in rem*.

In a proceeding *in rem* where several vessels are found in fault each bears its share regardless of ownership, and notwithstanding this rule results in charging one who owns more than one of the vessels with a larger proportion than he would be charged in a personal suit against himself and the owners of the other vessels.

When a duty is imposed for the purpose of preventing a certain consequence its breach not leading to that consequence does not make a defendant liable for the tort of a third person merely because the observance of the duty might have prevented that tort.

Questions certified in 154 Fed. Rep. 54, answered.

---

[1] Docket titles, No. 87, The Steam Tug "Eugene F. Moran," Michael Moran, Claimant, and the Scows "15 D" and "18 D," the Henry Dubois Sons Co., Claimant, v. The New York Central and Hudson River Railroad Company and the Steam Tug "Charles D. Matthews," John D. Daily *et al.*, Claimants; No. 88, The Henry Dubois Sons Company and the Steam Tug "Eugene F. Moran," Michael Moran, Claimant, v. the Steam Tug "Charles E. Matthews," John D. Daily *et al.*, Claimants.

THE facts are stated in the opinion.

*Mr. James Emerson Carpenter*, with whom *Mr. Samuel Park* and *Mr. James Keith Symmers* were on the brief, for the Henry Dubois Sons Company:

An equitable solution of the problem would be to treat the libellant and the respective claimants as the real parties and to divide the damages equally among the owners of the various vessels at fault irrespective of the form of the action.

In the alternative the tug and tow should be deemed a single vessel, and where the tug and tow are jointly in fault the damages should be divided equally between the tug and tow and a third vessel also in fault, and as between the tug and its tow the moiety should be borne by the owners of the tug and tow respectively in equal parts, subject to the rule laid down in *The Alabama and The Gamecock*, 92 U. S. 695.

In the apportionment of damages in admiralty the fundamental equitable principle is to equalize the burden among those who should bear it. *The North Star*, 106 U. S. 17; *Atlee v. Packet Co.*, 21 Wall. 389.

While not possessing the general powers of a court of equity, yet a court of admiralty decides matters before it upon principles of equity. *United States v. Cornell Stm. Bt. Co.*, 202 U. S. 184; *The Max Morris*, 137 U. S. 1.

Cases arise, undoubtedly, when both the tow and the tug are jointly liable for the consequences of a collision; as when those in charge of the respective vessels jointly participate in their control and management, and the master or crew of both vessels are either deficient in skill, omit to take due care or are guilty of negligence in their navigation. *Sturgis v. Boyer*, 24 How. 110, 121, 122. See also *The Mabey and Cooper*, 14 Wall. 204, and *The Virginia Ehrman and The Agnese*, 97 U. S. 309, 313.

The tug Moran and scows for purposes of navigation with reference to other vessels are to be regarded as a single vessel. *Transportation Co. v. Philadelphia & Savannah Nav. Co.*, 22

How. 461; *The Ivanhoe*, 7 Ben. 213; *S. C.*, Fed. Cas. No. 7,113; *The Civilta*, 103 U. S. 699; *The Gladys*, 144 Fed. Rep. 653, 655.

There is a joint liability of the tug and tow for their joint negligence. Where the tug and tow are jointly liable to a third ship the owners of the latter may sue either or both, but a right of apportionment lies between a tug and tow. *The Atlas*, 93 U. S. 302.

The court will not hold the tug and tow jointly liable unless there is fault in both. *The John Frazer*, 21 How. 184; *The Civilta*, 103 U. S. 699; *The Express*, 52 Fed. Rep. 890, 892; *Sturgis* v. *Boyer*, 24 How. 110; *The Clarita*, 23 Wall. 1, 11.

Where both tug and tow are held jointly liable the damages are to be divided between them subject to the rule laid down in the case of *The Alabama and The Gamecock*, 92 U. S. 695.

Where both tug and tow and a third ship are to blame for a collision between the tug or tow and a third ship the tug and the tow will be considered as one vessel and contribute together one-half, the remaining half to be borne by the third vessel. *The Englishman*, L. R. 1894, P. D. 239; *The Komuk*, 120 Fed. Rep. 841; *The Merrill C. Hart*, 162 Fed. Rep. 371; *The Fred. W. Chase* (D. C. D. of S. C. 1887), 31 Fed. Rep. 91.

See also, as bearing on the questions involved: *The Komuk*, 120 Fed. Rep. 841; *The Niobe*, 13 P. D. 55; 1891, App. Cas. 401; *The Brothers*, 2 Biss. 104; *The Nettie L. Tice*, 110 Fed. Rep. 461; *The Express*, 44 Fed. Rep. 392; *S. C.*, 46 Fed. Rep. 860; *S. C.*, 52 Fed. Rep. 890; *The Peshtigo*, 25 Fed. Rep. 488; *The Lyndhurst*, 92 Fed. Rep. 681; *The Anerly*, 58 Fed. Rep. 794; *The W. G. Mason*, 142 Fed. Rep. 913–918; *The James Berwind*, 44 Fed. Rep. 693, 697.

A tug and tow, guilty of a common fault, should be condemned to bear jointly one-half the damages due to collision with a third vessel also in fault, since the tug and tow for the purposes of navigation are deemed in law to be a single vessel under steam and subject to all the responsibilities of such a vessel under the rules. See *The Civilta*, 103 U. S. 701; *Sturgis*

v. *Boyer*, 24 How. 110; *The Mabey*, 14 Wall. 204; *The Virginia Ehrman*, 97 U. S. 309, 313; *L. P. Dayton*, 120 U. S. 337.

The answer to the third question should be that the damages be equally divided between the two flotillas, and the half assessed on the south-bound flotilla be charged half against the Moran and half against the two scows, the scows having a common owner.

*Mr. Archibald G. Thacher* and *Mr. Frederick M. Brown* for New York Central and Hudson River Railroad Company:

A tug and her tows should be regarded as a navigable unit, responsible to the extent of the total value of the unit to innocent third parties; the rights of the owners of the component parts to be adjusted between themselves.

*Sturgis* v. *Boyer*, 24 How. 110, which holds the contrary, should be reconsidered by this court in the light of other decisions. *The Palmyra*, 12 Wheat. 1, 14; *The Brig Malek Adtel*, 2 How. 210; *Schooner Freeman* v. *Buckingham*, 18 How. 182; *The Barnstable*, 181 U. S. 464, 467, 468; *The China*, 7 Wall. 53, 68; *Homer Ramsdell* v. *Compagnie Générale Trans*. 182 U. S. 406, 413, 414.

Liability *in rem* may be wholly unrelated to liability *in personam*. Although the United States is not subject to suit its property may be liable *in rem* for its share of a general average sacrifice of a private vessel where execution of the process does not interfere with the Government's possession. *United States* v. *Wilder*, 3 Sumner, 308; approved in *United States* v. *Cornell*, 202 U. S. 190. So also of the liability of government property *in rem* for salvage, although no suit would lie against the sovereign *in personam*. *The Davis*, 10 Wall. 15, 22. See also *The Siren*, 7 Wall. 152, 162; *Workman* v. *The Mayor*, 179 U. S. 552, 568; *The Arturo*, 6 Fed. Rep. 308.

The damages sustained by the New York Central car float should be made good to the extent of three-sixths by the Matthews, one-sixth by the Moran and one-sixth each by scows

15 D and 18 D. *The Northern Belle,* 9 Wall. 526, 528, 529; *The Keokuk,* 9 Wall. 517, 519.

*Mr. Harrington Putnam,* with whom *Mr. Charles C. Burlingham* was on the brief, for claimant of the tug Moran:

There is in England no authority for a division in thirds, and in this country the decisions to that effect do not appear to have been carefully considered. Marsden on Collisions (5th ed.), 125. The following cases discussed: *The Peshtigo,* 25 Fed. Rep. 488; *The Brothers,* 2 Biss. 104; *The Maling,* 110 Fed. Rep. 227; *The Lyndhurst,* 92 Fed. Rep. 681; *Scow No. 6 H,* 108 Fed. Rep. 429; *The Nettie L. Tice,* 110 Fed. Rep. 461.

The rule of the admiralty as to the apportionment of damages in case of mutual fault is not a rule of absolute justice, but one of practical utility. The only clear working rule is that where a vessel has contributed to a collision by her own fault, her owner cannot recover more than one-half of his damages.

There is nothing necessarily inconsistent between the case of *Sturgis* v. *Boyer,* 24 How. 110, and *The China,* 7 Wall. 53. See *The City of Norwich,* 118 U. S. 468; *Workman* v. *New York City,* 179 U. S. 552; *Tucker* v. *Alexandroff,* 183 U. S. 424; *The Clarita and The Clara,* 23 Wall. 1; *The Alabama,* 92 U. S. 695, 697; *The Max Morris,* 137 U. S. 1.

As to the law in England and in Germany, see *The Englishman and The Australia,* L. R. (1894) Prob. Div. 239; *The Unterweser 12,* tug *Blitz* and S. S. *Envoy,* Entscheidungen des Reichsgerichts in Civilsachen, 14 Feb., 1903, LIV, p. 13. Also in the Hanseatische Gerichtszeitung, 1903, Part I, 285, see Appendix.

*Mr. William S. Montgomery,* with whom *Mr. George H. Emerson* was on the brief, for claimant of the tug Matthews:

The District Court correctly apportioned the damages to the carfloat equally among the four vessels sued.

In admiralty the number of owners or the number of agents or servants of owners who are involved in a fault contributing to

a collision should have no effect upon the apportionment of the damages. In actions *in rem* what the admiralty looks to is the *res* and decrees the payment of damages against the offending thing and not against the owner.

Nor does admiralty consider the number or gravity of the faults of each vessel.

The only logical method of apportioning the damages, where the rule of comparative damage does not obtain, is that adopted by the District Court in apportioning the damages to the car-float—i. e., to apportion the damages among the offending vessels without any consideration whatever being given to owner-ship or the number of servants or agents of owners. *The W. G. Mason*, 142 Fed. Rep. 913; *The Juniata*, 93 U. S. 340; *The China*, 7 Wall. 53, and *The Barnstable*, 181 U. S. 464, distin-guished from *Sturgis* v. *Boyer*, 24 How. 110.

The correct rule of apportionment is to consider only the offending *res* before the court. If there are three offending *res*, then the damages should be divided into thirds. If there are four offending *res*, then the damages should be divided into fourths; and so on, no matter what may be the number of guilty *res*.

This, of course, may work an apparent hardship if more than one of the offending *res* belongs to the same owner; but then that owner has had more than one offending thing which has contributed to the damage, and the damage might have been less, or might not have happened at all, had not *each of his vessels* been guilty of fault.

The moment any consideration of ownership or of a common or similar fault is allowed to enter into the apportionment of the damages, infinite difficulties will arise. Hughes on Admi-ralty (1st ed.), 277; *The North Star*, 106 U. S. 17.

In this case there were four offending *res* before the court—the two scows, and the two tugs. The scows because neither of them had lights; the Moran because she did not see that the scows had lights, and also in other respects; and the Matthews because she kept on at full speed after the Moran did not an-

swer her signal. Had any one of them not been in fault, the collision might not have happened.

All having contributed, and all the offending *res* having been before the court, the District Judge divided the damages in the only logical and sensible way. *The Brothers*, 2 Biss. 104; *The Peshtigo*, 25 Fed. Rep. 488; *The Doris Eckhoff*, 41 Fed. Rep. 156; *The Lyndhurst*, 92 Fed. Rep. 681; *The Nettie L. Tice*, 110 Fed. Rep. 461; *The Maling*, 110 Fed. Rep. 227; *The S. A. McCaulley*, 116 Fed. Rep. 107.

The damages in the second case were also correctly apportioned.

In the second case the Henry Dubois Sons Company, owner of the scow 15 D, sued the tugs Matthews and Moran for the damages sustained by that scow. The parties before the court were then the Henry Dubois Sons Company, libellant, and the tugs Matthews and Moran.

The scow 18 D was not brought in by petition, but it clearly appeared from the proof that that scow was owned by the Henry Dubois Sons Company.

The District Judge, having found all four vessels at fault, directed that the libellant recover one-half of its damages, the recovery to be borne equally by each of the tugs.

This division was correct. *The Mariska*, 107 Fed. Rep. 989; *Erie Railroad Co.* v. *Erie Transp. Co.*, 204 U. S. 220.

MR. JUSTICE HOLMES delivered the opinion of the court.

These cases come here on certificates setting forth in nearly the same terms the facts of a collision. They both are proceedings *in rem*. In the first the New York Central and Hudson River Railway Company, as owners of a car-float that was damaged, libels the steam tug Charles D. Matthews, the steam tug Eugene F. Moran, and the scows 15 D and 18 D. In the second, the Henry Dubois Sons Company, as owner of the two scows, libels the two steam tugs. The statement of facts, slightly abridged, is as follows: At about half past seven, in the evening of February 1, 1905, the railroad company's car-float was pro-

ceeding up the Hudson River in tow of the tug Matthews, the navigation of the two being conducted solely by the master of the tug. They met the tug Moran, which was towing two mud scows down the river, scow 15 D, immediately behind the Moran, on a hawser, and behind 15 D scow 18 D on another hawser. A collision took place between the car-float and 15 D. Neither 15 D nor 18 D had the required lights. There was an employé of the owner in charge of each scow, and it was their duty as well as the duty of the master of the Moran to have the lights put up. The Moran was guilty of other faults also, so that the tug and the scows all three wrongfully contributed to the damage done to the float. The tug Matthews also was to blame, but the car-float was not, unless, contrary to *Sturgis* v. *Boyer*, 24 How. 110, answerable for the faults of the Matthews, which her owner had hired to move her from place to place in the harbor. The cases in the District Court are reported in 143 Fed. Rep. 187; in the Circuit Court of Appeals, in 154 Fed. Rep. 41, and 83 C. C. A. 153.

The question certified in the first case is, "In what proportion shall the damages sustained by the car-float be assessed upon the offending vessels?". In the second the same question is put concerning the damages sustained by the libellant, the owner of the two scows. In the latter case neither the car-float nor the scow 18 D are made parties or brought in. The District Judge divided the liability for damages to the float equally among the four vessels in fault, and on the same principle charged one-quarter of the damage suffered by scow 15 D to that scow and one-quarter to each of the other three, thus leaving the libellant to bear one-half and dividing the other half between the two tugs. Counsel for the two tugs agree that this result was right, although it is argued for the Moran that the true ground for it in the second case is the rule that when a vessel has contributed to a collision by her own fault her owner cannot recover more than one-half of the damages.

For the Henry Dubois Sons Company, which as owner of the two scows was required to pay one-half the total amount due

to the float, it is contended that the court should look to the owners after they have appeared, and should divide the damages on the ordinary principles of personal liability into thirds, or else regard the Moran and the two scows as one vessel, jointly liable for one-half, each owner to bear a quarter as between themselves. There is a faint suggestion that in the last apportionment regard might be had to the degree of fault.

The New York Central Railroad gets all its damages in any view, unless *Sturgis* v. *Boyer*, 24 How. 110, should be overruled. In that case it was held that a tug having control of a vessel in tow was solely responsible to a lighter upset by the vessel through the fault of the tug alone. (For the opinion of Judge Betts below see note to *The Express*, 46 Fed. Rep. 864.) We see no reason why the decision should not stand. No doubt the fiction that a vessel may be a wrongdoer and may be held, although the owners are not personally responsible on principles of agency or otherwise, is carried further here than in England. *The China*, 7 Wall. 53; *The Barnstable*, 181 U. S. 464, 467, 468; *Homer-Ramsdell Transportation Co.* v. *La Compagnie Générale Transatlantique*, 182 U. S. 406, 413, 414. See *The Blackheath*, 195 U. S. 361, 366. Possibly the survival of the fiction has been helped by the convenient security that it furnishes, just as no doubt the responsibility of a master for a servant's torts, that he has done his best to prevent, has been helped by the feeling that it was desirable to have some one who was able to pay. See *Williamson* v. *Price*, 4 Martin, N. S. 399, 401; *Williams* v. *Jones*, 3 H. & C. 256, 263. But after all a fiction is not a satisfactory ground for taking one man's property to satisfy another man's wrong, and it should not be extended. There is a practical line and a difference in degree between the case where the harm is done by the mismanagement of the offending vessel and that where it is done by the mismanagement of another vessel to which the immediate but innocent instrument of harm is attached. See *The Clarita and The Clara*, 23 Wall. 1; *The Alabama and The Gamecock*, 92 U. S. 695, 697; *The Atlas*, 93 U. S. 302, 318.

The fact that the vessels composing each flotilla were bound together is not sufficient ground for treating each flotilla as a unit. This follows pretty closely from the considerations that we have urged. If the attachment of the car-float to the Matthews did not make the car-float responsible to 15 D, or affect the extent or principles of its recovery for damage to itself, there seems to be no reason why a similar attachment should affect the distribution of liability among the vessels that were in fault. Their faults were several. The failure of one scow to show a light was distinct in fact and as a cause from the failure of the others to do the same thing, and from the faults of navigation of the Moran. In this case, at least, the attachment ought to have no more effect in diminishing liability for the guilty than in creating it for those free from blame. See, *The Express*, 44 Fed. Rep. 392; *S. C.*, 46 Rep. Fed. 860; *S. C.*, 52 Fed. Rep. 89; *Lyndhurst*, 92 Fed. Rep. 681; *Maling*, 110 Fed. Rep. 227; *S. C., S. A. McCaulley*, 116 Fed. Rep. 107; *Nettie L. Tice*, 110 Fed. Rep. 461.

On the other hand, although not to be regarded as a unit simply because they were tied together, the offenders severally are subject to a lien by the established principles of the proceeding *in rem*. It is said, truly enough, that if each scow has to pay a quarter, the amount with which the owners will be charged will be greater than in a personal suit where the owners all are solvent and pay each his share. But without invoking on the other side the characteristic vicissitudes of personal suits in tort, we may say that there is no injustice. Although even the admiralty does not attempt to go far in the quantification of damages, it is not an unreasonable supposition that on an average the owner of two vessels, each concurring in a wrongful result, will contribute twice as much toward producing it as if he had owned only one. If the second scow had been owned by another it would have had to pay its share. It is contrary to the theory of these proceedings to allow ownership to affect the case. We are of opinion that the District Court was right in dividing the damages equally among the guilty vessels

in the first suit. There is nothing stated sufficient to reopen the
question, if there is one, as to changing the apportionment
when there are different degrees of blame. *The Atlas*, 93 U. S.
302; *The Max Morris*, 137 U. S. 1. The fact that 18 D is not
a party to the second suit does not matter, so far as the question
of partially exonerating those before the court is concerned.

We have discussed the question on the assumptions upon
which it is presented, but there is one point that seems to us to
deserve further consideration from the Circuit Court of Appeals.
The only fault on the part of 18 D, that is set out in the state-
ment, is the absence of a light, and it is said that "therefore" it
was party to a common fault. We doubt whether the conclu-
sion follows from the premises. When a duty is imposed for
the purpose of preventing a certain consequence, a breach of it
that does not lead to that consequence does not make a defend-
ant liable for the tort of a third person merely because the ob--
servance of the duty might have prevented that tort. See *Gorris*
v. *Scott*, L. R. 9 Ex. 125; *Ward* v. *Hobbs*, 4 App. Cas. 13, 33.
The question arises, therefore, whether the duty to give warn-
ing by a light was imposed upon 18 D for any other purpose
than to prevent collision with itself. If not, then as the boats
are dealt with as individuals and not as parts of a single whole,
we do not see how the absence of a light on 18 D can be said to
have contributed to the loss. Pilot Rule 11, under the act of
June 7, 1897, c. 4, § 2, 30 Stat. 96, 102, requiring the light, is
quoted in *The Komuk*, 120 Fed. Rep. 841, 842. A duty of wider
scope has been thought to exist in a somewhat different case.
*The Lyndhurst*, 92 Fed. Rep. 681, 682.

On the second question also, subject to the doubt just sug-
gested, it appears to us that the course of the District Judge was
right in principle as well as in result. As observed in *The Mal-
ing*, 110 Fed. Rep. 227, the quantum of liability ought not to be
affected by the position of the party concerned as co-defendant
or plaintiff, and the rule of equal division among the guilty ves-
sels has prevailed, in some cases, at least, as well when one of
them was the libellant as when they were all on the same side.

*The Brothers,* 2 Biss. 104. See *S. C.,* on appeal, Fed. Cas. No. 9322; *Peshtigo,* 25 Fed. Rep. 488.

We answer the question in the first case, No. 87: Equally.

We answer the question in the second case: Equally, the offending vessel or vessels of the libellant bearing their proportion of the loss.