## THE ASFALTO.

## THE JOHN ENGLIS.

## THE RED ASH NO. 3.

District Court, S. D. New York.
Dec. 5, 1930.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for libelant Joseph F. O'Boyle.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt, of New York City, of counsel), for the John Englis.

William F. Purdy, of New York City, for the Red Ash No. 3.

Collision off Carteret Ferry Corporation's ferry slip at St. George, Staten Island, between the barge Asfalto in tow alongside the tug Red Ash No. 3 and the Bay Ridge-St. George ferryboat John Englis.

WOOLSEY, District Judge.

I hold the Asfalto, the John Englis, and the tug Red Ash No. 3 all to blame. Accordingly, the damages and costs must be divided equally between them.

I. The collision out of which these suits arose occurred at 7:15 p. m. on March 19, 1928, between 600 and 1,000 feet off and to the eastward of the slips of the Carteret Ferry Corporation at St. George, Staten Island.

The ferryboat John Englis, carrying passengers, on a trip from Bay Ridge on the Brooklyn side of the Upper Bay at St. George, Staten Island, and displaying regulation lights, was struck on her starboard side about the forward end of her paddle box by the bow of the barge Asfalto, which, in tow alongside of the tug Red Ash No. 3, was carrying sewage from Newark, N. J., through the Kill van Kull and the Upper Bay to sea and was displaying regulation navigation lights but, as hereinafter found, no bow light.

The angle of the collision was about 80 degrees between the starboard side of the ferryboat and the barge.

The ferryboat was badly damaged and the barge had a hole stove in her bow.

II. The collision occurred nearly at the expectable intersections of the respective courses of the ferryboat and the flotilla, and

858

the side on which the ferryboat was struck is persuasive of her fault unless some justification for her position was developed in the evidence.

But no such justification is found, and whether, originally, the ferryboat and the flotilla showed both starboard and port lights to each other and a meeting case might be made out, or whether the situation should be dealt with as a crossing case, is immaterial.

If the former, the Englis was not justified in blowing a two-blast signal and attempting to pass the flotilla starboard to starboard. If the latter, she was obviously in fault in not letting the flotilla on her starboard hand pass down the Bay ahead of her.

I think, however, that, having regard to their respective destinations and their real courses, this should be considered a crossing case, and I so find.

III. The question really litigated in the case, however, is whether the barge Asfalto and the tug Red Ash No. 3 were also in fault.

■ The Pilot Rules, whose status, if not conflicting with the statutory rules for navigation, is that of statutory rules (with the parts thereof to be here emphasized in italics), provide:

"Barges or canal boats towed alongside a steam vessel, if on the starboard side of said steam vessel, shall display a *white light on her own starboard bow;* and if on the port side of said steam vessel shall display a *white light on her own port bow;* and if there is more than one barge or canal boat alongside, the white lights shall be displayed from the outboard side of the outside barge or canal boat."

"The white bow lights for barges and canal boats referred to in the preceding rules shall be carried at least 10 feet and not more than 30 feet abaft the stem or extreme forward end of the vessel. *On barges and canal boats required to carry a white bow light, the white light on bow and the white light on stern shall each be so placed above the hull or deck house as to show an unbroken light all around the horizon, and of such a character as to be visible on a dark night with a clear atmosphere at a distance of at least 5 miles.*"

The barge Asfalto was 329 feet long, and had a beam of 45 feet. She had a sharp wedge shaped bow.

The tug Red Ash No. 3 was 110 feet long and had a beam of 22 feet.

■ The flotilla consisting of the Asfalto and the Red Ash No. 3 was made up with the sterns of the two vessels abreast. Thus arranged the Asfalto projected upwards of 200 feet ahead of the tug's bow.

The flotilla, therefore, was of such a kind as to illustrate the wisdom of the Pilot Rules as to the bow light and, for safety, to necessitate a strict compliance therewith.

On its own evidence the barge did not comply technically with the Pilot Rules above quoted, for her witnesses, as well as the witnesses called from the tug, agree that a lantern, which they claim was her bow light, was not on her port bow but was on her deck near her port bow and was not visible around the horizon, for it was placed on her deck behind a buffalo head and in front of a windlass.

The Red Ash No. 3 had been towing the Asfalto to sea for about three months. They were, therefore, old harbor companions.

The position of the light, which the witnesses for both tug and barge claim was in place before the collision, was chosen for the purpose of shielding the eyes of the navigators of the tug and was insisted on by them after the first trip or two which the vessels made together.

But I do not credit the evidence of the witnesses from the tug and the barge as to this bow light. I think that the story told by them is merely a plausible and somewhat elaborate excuse for their failure to have any light on the bow of the Asfalto as the Pilot Rules above quoted required, and to explain the fact that no bow light was found after the collision, which is admitted by all witnesses for all the vessels.

I find, therefore, that there was not any light placed on the deck of the Asfalto and that she did not comply with the Pilot Rules.

This finding is confirmed by the evidence of the independent witnesses from the city ferryboat Manhattan, which passed ahead of the Asfalto and port to port with the ferryboat Englis just before the collision, who all say that they did not see any light on the Asfalto's bow before or after they passed ahead of her.

I find further that the absence of this light was a contributing cause to the ferryboat trying to pass ahead of the flotilla instead of letting it pass ahead of her because it interfered with the judgment of those on the ferryboat as to the length of the flotilla.

■ IV. If I am wrong in this finding, there is, in any event, no doubt that if there was

a light it was insufficient and did not comply with the requirements of the Pilot Rules.

If the light was there, I think its insufficiency is shown to have contributed to the collision. Certainly it has not been shown that it did not contribute to it.

V. It is obvious that if, as here, a tug asks a tow to depart from a statutory rule for the convenience of the tug and those in charge of the barge acquiesce, both vessels are responsible for resultant damage not clearly shown to have been due to causes independent of such statutory fault.

I do not find any direct authorities on this point, but common sense—not a bad guide in a new situation—points to the correctness of such a decision.

I find, therefore, that both the Asfalto and the Red Ash No. 3 were severally guilty of fault in not having a bow light on the Asfalto, and that these faults contributed to the collision for which the Englis is also to blame.

VI. For cases involving the division of collision damages equally among more than two vessels or parties when they are all to blame, see The Eugene F. Moran v. New York Cent. & H. R. R. Co., 212 U. S. 466, 472–477, 29 S. Ct. 339, 53 L. Ed. 600, which approved on certificate the principle of such allocation laid down by Judge Holt in The Eugene F. Moran (D. C.) 143 F. 187, 199, in respect of which a certificate was granted by the Circuit Court of Appeals, 154 F. 41, 42 (C. C. A. 2); The Maling (D. C.) 110 F. 227, 238–240 (approved in The Eugene F. Moran v. New York Cent. & H. R. R. Co., 212 U. S. 466, at page 476, 29 S. Ct. 339, 53 L. Ed. 600), reheard on question of apportionment, sub nomine, The S. A. McCaulley (D. C.) 116 F. 107, 108, and reversed on other grounds, sub nomine The Pacific, 154 F. 943 (C. C. A. 3); The Manhattan (D. C.) 181 F. 229, 234–237; The Coamo, 267 F. 686, 688 (C. C. A. 2).

VII. As to the findings of fact and conclusions of law in this case, I refer counsel to my decision in The El Sol and The Sac City (November 3, 1930) 45 F.(2d) 852, and to the order entered in those cases on November 20, 1930, for my views as to the method of dealing with the requirements of the new Supreme Court Rule 46½ and the practice I purpose following if parties are unable to agree on findings of fact and conclusions of law in accordance with any opinion which I may render, or are unable to submit to me findings which are satisfactory to me.

VIII. The parties may present for settlement on three days' notice:

1. An order consolidating the instant case and providing for an appropriate caption for the consolidated case, and

2. A single interlocutory decree may then be entered holding that all three vessels are to blame for the collision and providing that one-third of the total collision damages shall be borne by each vessel or by its owner or claimant, that costs shall also be divided on the same basis, and that there shall be a reference to a commissioner to assess the damages suffered by the Englis and the Asfalto.