## THE KOOKABURRA.

## THE VICTOR T. KELLY.

## LOUIS–DREYFUS et al. v. SEABOARD GREAT LAKES CORPORATION.

### No. 266.

Circuit Court of Appeals, Second Circuit.
Feb. 13, 1934.

Jacob Aronson, of New York City (K. O. Mott-Smith, of New York City, of counsel), for New York Central R. R.

Purdy & Purdy, of New York City (Edmund F. Lamb and John E. Purdy, both of New York City, of counsel), for Seaboard Great Lakes Corporation and Atlantic Lighterage Corporation.

Otto & Easterday, of New York City (Henry E. Otto, of New York City, of counsel), for Louis Dreyfus & Co.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The libellant made a contract with the respondent, the Seaboard Great Lakes Corporation, to carry a cargo of grain from Buffalo to New York. The carrier employed its own barge which it put into a tow in charge of two tugs chartered from the claimant, Atlantic Lighterage Corporation, but manned, victualled and operated by itself. While passing between two piers of a bridge of the New York Central Railroad Company over the Hudson river at Albany, the tugs let the barge strike the false-work at the end of one of the piers; she was holed forward and sank after being beached. The suit was for the damage to the grain; it was brought against the carrier, the Seaboard Company in personam and the tugs in rem. The Seaboard Company and the claimant then brought in the New York Central Railroad Company in personam under the Fifty-Sixth Rule, charging that the false-work was in bad condition and contributed to, if it did not wholly cause, the damage. The cause came on for trial, and the judge found both tugs at fault for their handling of the tow, and the railroad for the condition of the false-work. He held the Seaboard Great Lakes Corporation and the two tugs liable for half the damages, and the railroad for the other half, each to answer for the other's half in case of default.

The issues of fact on which the faults of the parties depended were hotly disputed below, and turned very largely on the credibility of witnesses whom the judge saw. He was more likely to reach a just estimate of the relative weight of their testimony than we. While certainty is not possible we think with him that probably the barge did break out of the tow before she struck the false-work, due to the mismanagement of the tugs. If so, she first struck the west side of the iron sheathing (certainly not the nose of the false pier end), and later drifted or was pushed along into an open hole in the west side of the planking. Whether she was holed when first struck or later, is not so clear; the first is just possible. The nose of the pier had been bent to the westward by an earlier collision of some other vessel, and this sheared off the rivets of the first plate on the west side and raised its edge. Possibly the barge was impaled upon that, though the witnesses do not say that it struck at that spot. We need not decide whether the steel plate or a timber in the open space at the side made the hole, because the railroad was liable. We are very clear that the injury was caused in part by the bad condition of the bridge; we are also clear that both tugs contributed to it by bad management. There was no excuse that we can see for scraping along a pier that was obviously in damaged condition; obviously, because it is apparent from the photographs that some part of the opening was visible at about half tide when the collision happened.

While therefore we agree with the judge upon the faults of the tugs and the railroad, we think that the decree was wrong in dividing the recovery equally between the two respondents. In The Eugene F. Moran v. New York Cent. & H. R. R. Co., 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600, four vessels were at fault for a collision, two tugs and two scows, the scows owned by one person. Two suits were brought, one by a car float in tow of one of the tugs against all four vessels in rem; the other, by the owner of the two scows, one of which had been injured, against the two tugs, also in rem. In the first suit the court held each of the four vessels equally, the scow owner thus bearing half the damages; in the second this owner recovered half damages, the fault of his uninjured scow counting as though it was a separate wrongdoer, just as it did in the suit of the car float. In the case at bar the libellant sued the tugs in rem and the carrier in personam; as the tugs were only sureties for the carrier no difficulty could arise, if the railroad had not been brought in; the carrier, the Seaboard Company, would have had to bear the whole loss. The argument is that the two respondents must divide the damages because as between them each is liable primarily. We do not agree. If the libellant had chosen to sue the carrier and the railroad in personam, and the damages had been divided half and half, this would not have ended the suit. Although a wrongdoer, the railroad had a right of contribution. The Chattahoochee, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801; Erie R. Co. v. Erie & Western Transportation Co., 204 U. S. 220, 27 S. Ct. 246, 51 L. Ed. 450; The Ira M.

Hedges, 218 U. S. 264, 31 S. Ct. 17, 54 L. Ed. 1039, 20 Ann. Cas. 1235; The Gulf Stream, 64 F. 809 (C. C. A. 2) (semble); The Mariska, 107 F. 989 (C. C. A. 7); The Bern, 243 F. 859 (C. C. A. 2); The Cockatoo, 61 F.(2d) 889 (C. C. A. 2). It could have sued the tugs in rem, being subrogated to the libellant's rights against them, which it and the Seaboard Company had discharged. The Seaboard Company could not it is true have joined in that suit, being itself primarily liable, but that was a private matter dependent upon the charter, and would have no effect upon the relations between the railroad and the tugs. Just as the libellant need not have considered whether that charter was bare-boat, so need not the railroad, suing as the libellant's surrogate. In such a suit the division of damages laid down in The Eugene F. Moran v. New York Cent. & H. R. R. Co., supra, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600, would have applied; the railroad would have recovered one-twelfth of the loss from each tug, leaving it to bear only one-third. But this also would not have ended the litigation, because the tugs would there have been able to recoup their payments from the Seaboard Company, which was primarily liable as between them and it. The result of all these suits would therefore leave the Seaboard Company charged with two-thirds and the railroad with one-third; and the admiralty, whose procedure is especially plastic, can skip the by-ways and head direct for the goal. Thus it appears that the proper division of damages between the railroad and carrier cannot be half and half, without disregarding the doctrine of The Eugene F. Moran v. New York Cent. & H. R. R. Co., supra, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600. And indeed this must be true quite aside from the reasoning we have just been through, for the division of damages in the admiralty is not a question of form or procedure, but of substance. The Ira M. Hedges, supra, 218 U. S. 264, 31 S. Ct. 17, 54 L. Ed. 1039, 20 Ann. Cas. 1235; The Hudson (D. C.) 15 F. 162. Once it be decided that the owner of two offending vessels must bear a double proportion of the loss, quite as though they were separately owned, the rest follows. Possibly there may be an exception to this if the wrong does not create a maritime lien against the vessels concerned; the personification of the vessel as offender may stop there. We may leave that unanswered, because, in this case a towing lien arose against each tug. The John G. Stevens, 170 U. S. 113, 18 S. Ct. 544, 42 L. Ed. 969.

Decree modified by dividing the damages in the proportion of one to two, and as modified affirmed.