Thomas DRAMES

v.

SUN RIVER INVESTMENT, S.A.

Civ. A. No. 92–1252.

United States District Court,
E.D. Pennsylvania.

April 15, 1993.

Charles Sovel, Freedman and Lorry, P.C., Philadelphia, PA, for plaintiff.

Carl D. Buchholz, III, Rawle & Henderson, Lawrence D. Wright, Philadelphia, PA, for defendant.

MEMORANDUM

PADOVA, District Judge.

## I. INTRODUCTION

On December 30, 1992, I entered a verdict in favor of defendant Sun River Investment, S.A. ("Sun River") based upon jury answers to three Special Interrogatories. Before me now is plaintiff Thomas Drames' motion to vacate the verdict and grant a new trial. For the following reasons, I will deny Drames' motion.

Sun River owns the M/V KAIFU, a vessel that transports goods in foreign commerce. Sun River contracted with Holt Cargo Systems, Inc. ("Holt"), an independent stevedore, to unload fruit cargo from the M/V KAIFU. On April 10, 1991, Drames, a longshoreman employed by Holt, was injured while unloading cargo from the M/V KAIFU.

Pursuant to the Longshore and Harbor Workers' Compensation Act (the "LHWCA"), 33 U.S.C.A. §§ 901 et seq. (West 1986 and West Supp.1992), Drames brought suit against Sun River, alleging vessel negligence as the cause of his injuries. Drames claimed that his injuries resulted from Sun River's breach of its "active involvement duty"—the vessel owner's duty to exercise due care to avoid exposing longshoremen to harm from hazards that they may encounter from equipment under the active control of the vessel. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981).

Sun River filed a motion for summary judgment, which I denied.[1] The case proceeded to a bifurcated trial, the liability portion of which commenced on December 28,

---

1. Sun River's motion for summary judgment raised a "zone of danger" issue, asserting that as a matter of law injury to this plaintiff was so attenuated that it was out of the range of foreseeability and therefore not within the zone of danger created by Sun River's conduct. Denying defendant's motion, I held as follows:

Although it is true that responsibility does not extend to every consequence which may possibly result from negligence, on this record I cannot conclude that no genuine issue of material fact exists as to whether the injury to this plaintiff was so attenuated that it was out of the range of foreseeability. The entire sequence of events establishes that Drames may have been well within the zone of any obvious danger from Sun River's conduct, and thus, a jury might find that Sun River should have anticipated the risk to Drames. See Palsgraf [v. Long Island R.R.], 248 N.Y. [339,] 345, 162 N.E. [99,] 101 [ (1928) ] ("The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.").

Drames v. Sun River Investment, S.A., No. 92–1252, slip op. at 11–12, 1992 WL 357756 (E.D.Pa. Nov. 23, 1992).

1992 and concluded with the submission of six Special Interrogatories to the jury on December 30, 1992.[2] The jury answered Interrogatories Nos. 1 and 2 in the affirmative, but found, in answering Interrogatory No. 3 in the negative, that Drames was not within the "zone of danger." [3] Having answered Interrogatory No. 3 in the negative, the jury did not reach Interrogatories Nos. 4, 5, and 6. Based on the jury's determination that Drames was not within the "zone of reasonably foreseeable danger," I concluded that even though the jury found Sun River's conduct negligent, the law imposed no legal duty on Sun River under these circumstances. Accordingly, I molded a verdict in Sun River's favor and against Drames on the issue of liability.

Plaintiff assigns the following three errors as grounds for a new trial: (1) the Court erred in submitting Interrogatory No. 3 to the jury because the issue of whether Drames was within the zone of danger created by Sun River's conduct is a matter of law for the Court to decide; (2) the Court erred in its charge by delineating an improper standard of law with respect to whether plaintiff was within the zone of danger; and (3) the jury's answers to Interrogatories Nos. 2 and 3 are irreconcilably in conflict.

## II. EVIDENCE PRESENTED AT TRIAL

On the day of his injury, Drames had been assigned to operate the M/V KAIFU's booms and winches serving the No. 3 hatch in the cargo unloading process. After the start of the process, a chandelier spreader [4] was attached to the cargo hook, which was connected to the booms that Drames was operating. Shortly thereafter, Drames experienced difficulty in operating both booms simultaneously.

The problem was reported to the ship's crew who made the decision to attempt to remedy the problem by repositioning the starboard boom. The crew members climbed upon the elevated winch deck and took over operation of the booms from the longshoremen to correct the problem. One crew member relieved Drames at the controls, and Drames left the control area and assumed a position on the elevated winch deck.

During the repositioning operation that was conducted by the crew, the line to which the chandelier spreader was attached became slack. As a result, the chandelier spreader took a free fall into the hatch, causing a noise to emanate.[5] Drames testified that he was startled by what he considered a loud and unusual noise that he feared might be a boom falling and, to escape the perceived danger, ran into a ventilator adjacent to the place where he was standing, thereby suffering injury. Drames' exact position was contested by the parties at trial. However, the evidence is clear that Drames was well outside the area of the falling chandelier spreader.

During the course of the trial, the jury was given a vivid description of the pertinent areas and cargo unloading equipment aboard the M/V KAIFU from photographs and the use of a model. The parties, counsel, and witnesses used the photographs and model

---

2. The jury was asked:

   1. Do you find that the defendant was negligent in causing the chandelier to fall?
   2. Was the falling of the chandelier a proximate cause of plaintiff's accident?
   3. Was the plaintiff within the zone of reasonably foreseeable danger created by defendant's conduct?
   4. Was the plaintiff contributorily negligent?
   5. Was the plaintiff's contributory negligence a proximate cause of plaintiff's accident?
   6. Stated as percentages, what portion of the accident was proximately caused by the defendant's negligence and what portion was proximately caused by plaintiff's contributory negligence?

3. For a review of the "zone of danger" issue (the "zone of danger" issue is sometimes referred to as the *"Palsgraf"* issue) see *Palsgraf*, 248 N.Y. 339, 162 N.E. 99; *Diamond State Tel. Co. v. Atlantic Refining Co.*, 205 F.2d 402 (3d Cir.1953); Restatement (Second) of Torts § 281(b) & comments a, c.

4. A chandelier spreader is a cargo lifting device consisting of a large metal frame with prongs extending from its side at right angles. It is approximately 12 feet wide by 10 feet tall.

5. In answering Interrogatory No. 1 in the affirmative, the jury determined that the fall of the chandelier spreader was caused by the negligence of the crew.

extensively in depicting and arguing their respective positions regarding the underlying facts and events and their implications pertaining to recognizable risks of harm. Sun River vigorously contested Drames' version of the facts, asserting that there was no loud or unusual noise nor any reason from the circumstances (Drames' position and work environment) for Drames or the crew to perceive any risk of danger from a falling chandelier spreader.

## III. STANDARD OF REVIEW

A "new trial may be granted to all or any of the parties of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . ." Fed. R.Civ.P. 59(a). Three grounds for granting a motion for new trial have been recognized:

(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *See Step–Saver Data Systems, Inc. v. Wyse Technology*, 752 F.Supp. 181, 185 (E.D.Pa.1990) (citing 6A Moore, Lucas & Grother, Moore's Federal Practice ¶ 59.07, at 59–73 (2d ed. 1984); *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir. 1973)), *aff'd in part and rev'd in part on other grounds*, 939 F.2d 91 (3d Cir.1991). The decision of whether to grant a new trial rests within the sound discretion of the trial judge, whose duty it is to ensure that the verdict does not result in a miscarriage of justice. *See Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135, 140 (3d Cir.1985); *Step–Saver*, 752 F.Supp. at 184. With this standard in mind, I will now address Drames' claims of error.

## IV. ASSIGNED LEGAL ERRORS

### A. *Submission of Zone of Danger Issue to the Jury*

Based upon the jury's finding that Drames was outside the zone of danger created by defendant's conduct (Special Interrogatory No. 3), I determined that Sun River owed no duty to Drames within the factual context of this case and molded a verdict in favor of Sun River on the issue of liability. Drames argues that the mere submission of the "zone of danger" question to the jury was error because this question is exclusively for the Court to determine as a matter of law. The legal issue decided by me of whether Sun River owed a duty to Drames turned in part upon a sensitive analysis and determination of contested facts and varying inferences decided by the jury. Such allocation of functions between Court and jury was appropriate.

In negligence actions brought under the LHWCA, the 1972 amendments to this statute place the burden upon longshoremen to prove negligence on the part of the owner or operator of the ship under tort standards comparable to land based tort standards, which are to evolve as a matter of federal common law. *See Scindia*, 451 U.S. at 164–66, 101 S.Ct. at 1620–21. In fleshing out these LHWCA tort principles, federal courts have looked to the Restatement (Second) of Torts (1965) (the "Restatement") for guidance. *See Scindia*, 451 U.S. at 174 n. 21, 101 S.Ct. at 1625 n. 21; *Kirsch v. Prekookeanska Plovidba*, 971 F.2d 1026, 1031–33 (3d Cir. 1992).

The Restatement requires as an element of a cause of action for negligence that the plaintiff establish that he was owed a legal duty by defendant. *See* Restatement § 281. To determine whether defendant owed a legal duty to plaintiff, plaintiff must have been within the foreseeable zone of danger created by defendant's conduct. *See Palsgraf*, 248 N.Y. at 339, 162 N.E. at 99; Restatement § 281 comment c & illustration 1 ("In order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individually, or to a class of persons . . . of which the other is a member.").

The *Palsgraf* or zone of danger issue is a part of the element of legal duty under the Restatement. *See* Restatement § 281(b) & comments a, c. The concept of zone of danger articulated in *Palsgraf* is a settled part of the law in most jurisdictions and needs no further elaboration. *See Dahlstrom v. Shrum*, 368 Pa. 423, 425–27, 84 A.2d 289, 291 (1951); *Carson v. City of Philadelphia*, 133 Pa.Commw. 74, 80, 574 A.2d 1184, 1187

(1990); 3 Harper, James & Gray, The Law of Torts § 18.2, at 654–71 (2d ed.1986).

The *Palsgraf* zone of danger analysis has also been applied to maritime tort cases, and I see no reason why it should not be applied in cases brought under the LHWCA. *See Diamond State Tel. Co.*, 205 F.2d at 402. In *Diamond State Tel. Co., supra,* Circuit Judge Hastie stated the following:

> The Court reaches its result by applying the familiar *Palsgraf* doctrine to maritime tort. I too would apply the *Palsgraf* doctrine to maritime causes. Indeed, the *Eugene F. Moran* 1909, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600, seems to require that this be done. But that doctrine leads me to a different result in this case.
>
> In the *Palsgraf* case itself Chief Judge Cardozo thus explained the conception limiting actionable negligence:
>
> 'Negligent the act is * * * only because the eye of vigilance perceives the risk of damage. * * * The risk reasonably to be perceived (which) defines the duty to be obeyed * * * is risk to another or to others within the range of apprehension' 248 N.Y. at page 344, 162 N.E. at page 100.
>
> After the doctrine is stated, the problem remains in each case to define the 'the range of apprehensions.'

*Diamond State Tel. Co.*, 205 F.2d at 410 (Hastie, J. dissenting in part) (footnotes omitted).

■ The question raised in this case is who properly had the function of defining the "range of apprehension," the trial judge or the jury. In negligence actions, the Court decides questions of law, and the jury decides questions of fact. *See* Restatement §§ 328B comment b, 328C(a). For example, the Court determines whether the law imposes upon the defendant any legal duty to act for the protection of the plaintiff. *See* Restatement § 328B comment e. Where the existence of a legal duty hinges upon the finding of a particular fact, however, it becomes the duty of the Court to instruct the jury as to the defendant's duty, or absence of duty, depending upon the particular factual conclusion that the jury reaches. *See* Restatement § 328B comment e. Only where reasonable minds cannot differ with respect to the existence or non-existence of a particular factual issue upon which the defendant's legal duty turns must the Court take that factual issue away from the jury and decide it as a matter of law. *See* Restatement §§ 328C comment a, 328B(a) & comment d.

The legal issue of whether Sun River owed a duty to Drames in this case, turned, in part, upon a determination as to whether Drames was within the zone of danger or range of apprehension created by Sun River's conduct. *See Palsgraf,* 248 N.Y. at 339, 162 N.E. at 99; *Diamond State Tel. Co.,* 205 F.2d at 402; Restatement § 281(b) & comment c, illustration 1. For plaintiff to be within the zone of danger or range of apprehension, defendant's conduct must have created a recognizable risk of harm to plaintiff or to a class of persons of which plaintiff was a part. *See* Restatement § 281(b) & comment c. The standard is easily stated, but its application in this case is fact driven. The underlying circumstances and events that led to and surrounded Drames' injury had to be determined before the zone of danger issue could be resolved because the determination of the latter was dependent upon the former. And reasonable minds could differ over these underlying events and circumstances.

Stevedores and their longshore employees are regarded as experts in the loading/unloading operations aboard vessels. *See Scindia,* 451 U.S. at 172, 101 S.Ct. at 1624. They are thus sensitive and informed as to their maritime work environment, including the various facilities, equipment and their concomitant noises. Crew members work with an awareness that longshoremen aboard ships during an unloading operation are not strangers to such work environment and can be expected to react with an awareness of their surroundings. These considerations cannot only be factored into questions concerning a longshoremen's contributory negligence but also issues regarding a vessel owner's duty, including foreseeability, reasonable apprehension, unreasonable risk of harm, and unusual and unexpected results.

An examination of the evidence coloring these considerations supports the conclusion

that reasonable minds can differ with respect to whether Drames' was within the zone of danger created by Sun River's conduct. For example, there was conflicting evidence as to the loudness of the noise that was heard by Drames prior to his accident. There was also conflicting evidence that loud noises, such as the one that caused Drames to flee and run into a ventilator, were commonplace on vessels during stevedoring operations. There was conflicting evidence as to Drames' exact position on the winch deck at the time the crew repositioned the starboard boom. And, certainly, varying inferences could be drawn as to whether Drames, an experienced longshoreman, had reacted to the incident in a "reasonably apprehensible" manner, given his position and the work environment as found by the jury.

■ Upon reconsideration of this issue, I conclude again, as I did on Motion for Summary Judgment and at trial, that reasonable minds may differ with respect to whether Drames was within the zone of danger or range of apprehension created by Sun River's conduct. Based upon conflicting evidence and varying inferences, a jury may reasonably have concluded that Drames' reaction to the noise was so attenuated from Sun River's negligence that Drames was outside the zone of danger; or it may reasonably have concluded the opposite. Therefore, an open question existed as to whether Drames was within the class of persons to whom Sun River should have recognized a risk of harm as a result of its readjusting the starboard boom. I employed Chief Judge Cardozo's admonition that "the range of reasonable apprehension is at times a question for the Court, and at times, if varying inferences are possible, a question for the jury." *Palsgraf,* 248 N.Y. at 345, 162 N.E. at 101. Accordingly, it was appropriate to submit Interrogatory No. 3 to the jury for its deliberation.

B. *Substance of the Jury Charge*

Drames next contends that my zone of danger instructions to the jury were deficient. The following instructions pertaining to the zone of danger issue were presented to the jury:

Now, as you heard—you've heard us use the term foreseeable zone of danger. And that's question number three in the interrogatories. And, I want to define for you now what we mean by foreseeable zone of danger.

As I told you, it's a concept which relates, to some extent, to causation, to proximate cause. Some legal authorities also relate it to duty within the concept of negligence. We thought that we would identify the issue for you as a separate question and we've articulated it in question number three to make it easy for you to focus in on that as well as the other things.

The rule pertaining to foreseeable zone of danger has as its basis the concept that responsibility, legal responsibility, shouldn't—should not extend to every consequence which may possibly result from negligence. It's an effort on the part of the law to keep the concept of responsibility within the realm of reasonableness. So, that if a set of circumstances cause [sic] an injury or an accident that's so attenuated, so unusual and removed[,] then the law would hold under those factual circumstances that the incident was not within the foreseeable zone of danger and, therefore, there should not, as a matter of policy and philosophy, be legal responsibility.

So it's containment. It's containment on legal responsibility. It comes from the proposition that responsibility should not extend to every consequence which could possibly result from negligence.

And, let me give you some guidelines with respect to how to handle the issue of whether plaintiff was within the zone of reasonably foreseeable danger created by defendant's conduct. This element plaintiff must establish by a preponderance of the credible evidence. And, the element is that he was in the foreseeable zone of danger created by defendant's conduct.

Now, in order to find in favor of the plaintiff on this element, you must conclude that the plaintiff was within the class of persons for which harm was reasonably foreseeable as a result of defendant's conduct. And, you take into consideration all

the circumstances. You can take into consideration the geography or the territory, the dimensions. You may want to take that into consideration. You may want to take into consideration the noise. You can take into consideration all of the circumstances when it comes to that. The issue is whether or not plaintiff was within the class of persons for which harm was reasonably foreseeable as a result of the defendant's conduct.

Now, in order for defendant to be within the foreseeable zone of danger, defendant's conduct must have created a recognizable risk of harm to the plaintiff either individually or to a class of persons as, for example, all persons within a given area of danger[,] of which the plaintiff was a part or member.

If the actor's conduct, in this case the defendant, creates such a recognizable risk of harm only to a particular class of people of which the plaintiff was not a part or a member, the fact that it, in fact, caused harm to the plaintiff to whom the defendant could not reasonably have anticipated injury, does not place the plaintiff within the foreseeable zone of danger.

Now, it's a concept which is not easy to articulate or state. I've done it for you in the affirmative and in the negative. In determining whether a particular harm or hazard is within the scope of the risk created by the defendant's conduct, risk must be understood in the broader sense of including all those hazards and consequences which are to be regarded as normal and ordinary.

In determining whether events are within the scope of the risk created by defendant's conduct, you as the jury are compelled of necessity to resort to hindsight rather than foresight. You see, you as the jury have to take a look at all the circumstances and you're looking at those circumstances as a matter of hindsight. And, you have to make a judgment as to whether or not the event appears to have been normal, not unusual, closely related or not closely related to the danger created by the defendant's conduct. These are the touchstones

of whether or not this risk and this element has been established in this case.

. Now, as applied to the facts in this case, if you find that the defendant's negligence caused the chandelier to fall, you must then determine the zone of foreseeable danger created by the defendant's conduct. If Mr. Drames, as a matter of our hindsight, was outside the zone of foreseeable danger, then you must find in favor of the defendant. You will answer that question no, question number three.

If, however, plaintiff was within the zone of foreseeable danger; you see what was reasonable, what was foreseeable, was it unusual?, was it attenuated?, was it remote?, then you must go on, of course, to the next questions in the interrogatories form that I gave you.

Transcript of Civil Jury Trial Colloquy Prior to Closings and Judge's Charge Before the Honorable John R. Padova United States District Court Judge, Dec. 30, 1992, at 30–33.

Drames assigns error to these substantive jury instructions, because he claims that reasonable foreseeability is the improper standard with respect to the zone of danger issue. These jury instructions, Drames asserts, left the jury with the improper impression that a plaintiff is within the zone of danger if a reasonable man in the defendant's position should have expected the risk to the plaintiff. Drames asserts that the proper test for determining whether a plaintiff is within the zone of danger is whether, viewing a situation from hindsight, the result was not unusual and not unexpected by the negligent tortfeasor.

In determining whether they are so misleading or inadequate as to be sufficiently prejudicial to warrant a new trial, jury charges are to be viewed as a whole. *See Savarese v. Agriss*, 883 F.2d 1194, 1202 (3d Cir.1989); *Northeast Women's Center, Inc. v. McMonagle*, 689 F.Supp. 465, 473 (E.D.Pa. 1988), *aff'd*, 868 F.2d 1342 (3d Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). No error is present where either: (1) the challenged instructions accurately state the law relating to the particular issue under scrutiny or (2) the instructions to which the moving party objects

are practically identical to the proposed jury instructions submitted by the movant. *Cf. Philadelphia Fast Foods, Inc. v. Popeyes Famous Fried Chicken, Inc.*, 647 F.Supp. 216, 230–31 (E.D.Pa.1986).

The following discussion summarizes the law with respect to the "zone of danger" issue. To be liable to a plaintiff for negligent acts, a defendant must have created a recognizable risk of harm to the plaintiff individually or to a class of persons of which the plaintiff is a member. If, however, a defendant's conduct does not create a recognizable risk of harm to a plaintiff or creates a recognizable risk of harm only to a particular class of persons, of which a plaintiff is not a member, the fact that his conduct subsequently harms the plaintiff does not make the defendant liable to the plaintiff. *See* Restatement § 281 comment c. In determining whether a particular harm is within the scope of the risk created by the defendant's conduct, the risk includes all of those hazards and consequences that are regarded as normal and ordinary and is not limited to those hazards that a reasonable man would take into account in planning his conduct. *See* Restatement § 281 comment g. In determining whether certain events are within the risk created by the defendant's conduct, the Court uses a hindsight, rather than a foresight, test. *See* Restatement § 281 comment g. If an event appears to have been normal, ordinary, not unusual, and closely related to the danger created by the defendant's conduct, it is regarded as within the scope of the risk, even though it would not have been anticipated by a reasonable man in the actor's place. *See* Restatement § 281 comment g.

The charge given to the jury in this case was not misleading because, taken as a whole, it accurately delineated the fundamental legal principles involved in the zone of danger issue. First, the instructions relate to the jury that the "zone of danger" concept finds the defendant liable for its negligent acts with respect to the plaintiff if the defendant creates a recognizable risk of harm to the plaintiff individually or to a class of persons of which the plaintiff is a member. Second, the instructions adequately set forth a hindsight test that focuses on whether an accident is normal, usual, ordinary, closely related to, not attenuated, and not remote from the defendant's tortious conduct.

The jury instructions were also nearly identical to the jury instructions proposed by counsel for Drames. Plaintiff submitted the following as a point for charge:

> In determining whether a particular harm or hazard is within the scope of the risk created by the defendant's conduct, "risk" must be understood in the broader sense of including all of those hazards and consequences which are to be regarded as normal and ordinary. "Risk" is not limited to those hazards which a reasonable man would have in contemplation and take into account in planning his conduct. Rather, in determining whether events are within the scope of the risk created by the defendant's conduct, the courts, and you the jury, are compelled of necessity to resort to hindsight, rather than foresight. If an event appears to have been normal, not unusual, and closely related to the danger created by the defendant's conduct, it is regarded as within the scope of the risk even though, strictly speaking, it would not have been expected by a reasonable man in the defendant's place.

Plaintiff's Requests for Charge at ¶ 8. As set forth above, I included a nearly verbatim recitation of plaintiff's proposed jury instruction at ¶ 8. The second sentence and the last clause of the last sentence of plaintiff's request for charge number 8 were inadvertently omitted from the jury charge. I do not find such omissions to be sufficiently prejudicial as to warrant the grant of a new trial because, as discussed above, the instructions, as a whole, accurately related the legal principles relating to the zone of danger issue. I therefore find that the jury instructions were proper.

## IV. ASSIGNED FACTUAL ERROR

Drames also asserts that the jury's answers to Interrogatories Nos. 2 and 3 are irreconcilably inconsistent and claims, for that reason, that he is entitled to a new trial. This argument is without merit. First, Drames' counsel admitted at oral argument

on this motion that to the extent the zone of danger issue relates to the legal duty, there is no inconsistency in the jury's answers to these Interrogatories.

Second, the jury found that: (1) Sun River was negligent in permitting the chandelier spreader to fall; (2) the falling of the chandelier spreader proximately caused the accident in which Drames was involved; and (3) Drames was outside the zone of danger created by defendant's conduct. This last factual finding negates the existence of a duty and is not inconsistent with factual findings that establish breach and causation. As a matter of law, a finding of breach and causation does not require a finding of duty because all three—duty, breach, and causation—are separate and distinct elements to a negligence claim.[6] Accordingly, there are no manifest errors of fact, and plaintiff's motion for a new trial will be denied.[7]

---

**6.** The only potential inconsistency in the jury's findings arises from the numerical ordering of the interrogatories because without a duty (as a result of Drames' being found to be outside the zone of danger), there cannot be a breach or a finding of proximate cause. However, counsel for Drames did not object to the numerical ordering of the Special Interrogatories. Moreover, I determined that Sun River owed Drames no duty and therefore molded a verdict based upon the jury's findings with respect to this factual determination. Accordingly, there is no real inconsistency.

**7.** In its reply memorandum to Drames' motion for a new trial, Sun River makes one additional argument for why I should deny Drames' motion. Sun River maintains that if any error was committed with respect to any of the issues raised by Drames in his motion for a new trial, it was harmless error because the denial of Sun River's motion for a directed verdict, which was made at the close of Drames' case at trial, was error. Sun River contends that the doctrine of *res ipsa loquitur* was inapplicable to this case and, therefore, my denial of Sun River's motion for a directed verdict based upon plaintiff's failure to prove Sun River's negligence was error.

Under the Federal Rules of Civil Procedure, the motions for "directed verdict" and "judg-

ment notwithstanding the verdict" are now both referred to as "motions for judgment as a matter of law." *See* Fed.R.Civ.P. 50 Advisory Cmtee Notes under subd. (a). A post-trial motion for judgment as a matter of law must be made within ten days of the entry of a contrary judgment. *See* Fed.R.Civ.P. 50(b) & Advisory Cmtee Notes under subd. (b). The trial court may not enlarge the time for making the motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50 Advisory Cmtee Notes under subd. (b) (stating that the amendments were intended to retain the time limits for the old rule); *Wall v. United States*, 592 F.2d 154 (3d Cir.1979).

Although Sun River prevailed on the verdict at trial, its argument that I erred in not granting its "motion for a directed verdict," which is the same as a "motion for judgment as a matter of law," is essentially a post-trial "motion for judgment as a matter of law" on the applicability of *res ipsa loquitur.* Since such "motion" was filed on January 29, 1993, which is more than ten days after the entry of judgment on December 30, 1992, I cannot consider it. *See* Fed.R.Civ.P. 6. Furthermore, I do not need to reach Sun River's alternative argument relating to the applicability of *res ipsa loquitur* to this case because in denying Drames' motion, I am ruling in favor of Sun River. Accordingly, I decline to address the issue of whether *res ipsa loquitur* was applicable to this case.